## Case No. 3,443.

### CROWELL v. A CHAIN AND ANCHOR.

[25 Leg. Int. 140;[1] 6 Phila. 478.]

Circuit Court, E. D. Pennsylvania. 1868.

#### SALVAGE—DERELICT.

A salvor is not entitled to compensation for labor and injury after he is informed that the property is not derelict.

[1] [Reprinted from 25 Leg. Int. 140, by permission.]

[Appeal from the district court of the United States for the eastern district of Pennsylvania.

[In admiralty. Libel by the master of the steamship Norman against a chain and anchor.]

GRIER, Circuit Justice. The 35th section of the act of assembly of Pennsylvania of the 29th March, 1803 [5 Laws Pa. 564], was intended to encourage mariners to use their best endeavors to save derelict property, and also to protect it from the frauds of the salvors. The chain and cable in this case did not not come within the category of abandoned or derelict property. When the Norman was compelled to leave it near the wharf in Chester, it was left in charge of an agent, who, though not in the actual possession, was potentially so, and had made arrangements to bring the chain and anchor on shore. When the master of the schooner Brave had discovered the property, and commenced raising it, under the supposition that it was derelict, he was immediately informed of the fact that it was not derelict, and that the agents of the owners were preparing to remove it. This notice he disregarded, under pretence that the persons who gave it were drunk and used abusive language. He persisted in his endeavors until about two o'clock p. m., when the owner of the wharf, who had charge of the property, brought his attorney, Mr. Ward, on board, before the anchor was lifted. This testimony, which is not contradicted or disputed, is as follows: "I told Captain Mears that I came there with Mr. Reaney to see about that chain and anchor; that it belonged to the steamship Norman, and had been lost last winter in the ice; that the owner had requested Mr. Reaney to be on the lookout for it; and that their men had made arrangements to fish it up. I further told him that there was no disposition to do anything unfair or to deprive him of a just compensation for his services, but that he would not be allowed to take it away. Mr. Reaney said further, that any security required should be given for the proper compensation of those men for any labor they might have done about the chain," etc. Mr. Reaney proves that he told Captain Mears that if he would come alongside his (Reaney's) wharf he would have a rope thrown out to make fast to the chain, and said, "You are grumbling about straining your mast and injuring your shroud. Why do you lift it any more? You have enough raised to come alongside the wharf." He still kept on working, etc., etc.

1. It is clear that the property in question was not derelict. The captain of the schooner should have ceased to interfere with it after the notice given, and especially after the visit of Mr. Reaney and his attorney.

2. After the very fair offer of Mr. Reaney, the captain of the schooner acted wholly in the wrong, and was entitled to no compensa-

tion for labor and injury suffered by his vessel after that time. Hence, the testimony as to what occurred afterwards can not affect the result, and is wholly irrelevant. Fifty dollars would be a large compensation for any labor or injury to the vessel, up to that time. The claimants may have a decree for that sum, but without costs.